McInnis *v*. Manning.

[95 South. 250.  No. 23072.]

CONTRACTS. *Evidence. Antecedent agreements merged in writing, which
cannot be varied, contradicted, or explained by parol.*

Where parties to a contract reduce their agreements to writing which is
plain and unambiguous in its terms, parol evidence of antecedent
agreements, negotiations, and understandings are not admissible to
vary, contradict, or explain their meaning.  All antecedent agree-
ments are merged in the written contract, and the contract is the sole
exponent of the agreement.

APPEAL from chancery court of Simpson county.
HON. D. M. RUSSELL, Chancellor.

Suit by A. K. McInnis against G. L. Manning. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*C. M. Whitworth,* for appellant.

The litigants, herein, were jointly interested in two saw-mills, located at Byrd and Shivers, Mississippi. In the dissolution of their interest, Manning conveyed all the interest he had, to McInnis in the mill at Byrd, and McInnis, conveyed all the interest he held to Manning in the mill at Shivers, as is shown by the exhibits "A" & "B" on pages 7 and 9 respectively. The only item in controversy is the sixteen hundred and twenty-four dollars and ninety-eight cents arising from the proceed of lumber manufactured and sold by Manning from the Byrd mill, Manning, along with other property, conveyed "all accounts, money, etc., owned by the Long Leaf Lumber Co. and myself." This language is clear, unambiguous and unsusceptible to but one meaning, and that is all accounts, money, etc., arising from the operation of the Byrd sawmill on hand was conveyed under exhibit "a" to A. K. McInnis. On pages 43 and 44, Manning states that he, between the 16th and 22nd of April, withdrew this sixteen hundred and twenty-four dollars and ninety-eight cents from the bank, without authority from any one except the unsigned and unexecuted agreement marked exhibit "1," pp. 58 and 59. Can exhibit "1" purporting to be a copy of a contract, be considered a contract itself? If it cannot then the defendant, Manning, has no standing in court. 9 Cyc. 280-281. "Where parties are merely negotiating as to the terms of an agreement to be entered into between them there is no meeting of minds while such agreement to be entered into between them, is incomplete. Thus where they intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed."

Could the contract—exhibit "1" be enforced, or any
of its terms? If it cannot, then how can it be tacked on
and become a part of the conveyance marked exhibit "A,"
pp. 7-8 of the bill of complaint? The parties, consideration
and terms are different. It is unsigned, unexecuted and
died in still-birth. It is void, destitute of legal effect, and
should not be considered as evidence or in any respect in
the determination of this cause. *Watson* v. *Kirb,* 20 So.
624, an Alabama case. The court said, on page 626: "This
contract is complete in itself and must be regarded as
sole memorial of the agreement of the parties as then
made. Prior or contemporaneous statements or stipula-
tions which add to or vary the effect of the writing can-
not be received."

The conveyance under exhibit "A" between McInnis and
Manning is the sole memorial of their agreement and
other agreements and statements cannot be received to
change its effect. I therefore respectfully submit that this
case ought to be reversed and a decree entered for sixteen
hundred and twenty-four dollars and ninety-eight cents
with all accrued interest and cost for and in behalf of
appellant.

*Hilton & Hilton,* for appellee.

It will be noted that counsel in his very able brief relies
on the proposition that the memorial in writing expressed
what the parties intended and it is the arbiter of the rights
of the parties here. We are perfectly willing to submit
the cause on the record as made here which embraces the
deed; and we confidently rely on the deed if taken and
construed so as to harmonize the various paragraphs, as
upholding our contention. As we understand the law,
this is the first rule applied to its construction and inter-
pretation and in applying this rule parole evidence is re-
sorted to, to aid the interpretation. If the instrument
can be harmonized by applying this rule, the second re-
sort is to let it stand as an ambiguous instrument, and

again parole evidence is resorted to, to arrive at the intention of the parties. As said in the *Hart case, supra,* the proper end of all rules of construction is to effect the intention of the parties to the instrument and this is true of deed as well as other writings.

Etheridge, J., delivered the opinion of the court.

The appellant brought suit in the chancery court to recover from the appellees certain moneys claimed to be due him under a contract or a conveyance dated April 21, 1920, in which Manning conveyed to McInnis a one-half interest in a certain partnership, and also to certain timber described in the said deed, the said deed being a conveyance of all interest in the Long Leaf Lumber Company and of himself under a partnership arrangement between them. The conveyance, after describing the timber, etc., reads:

"I also convey to the said A. K. McInnis my one-half interest in and to two yoke teams, equipped with wagons, chains, yokes, tools, etc., also whatever interest in all the lumber manufactured by the Long Leaf Lumber Company, my interest in and to all tools and other interest and equipments owned jointly by myself and the Long Leaf Lumber Company, all accounts, money, etc., owned by the said Long Leaf Lumber Company and myself. It is the intention of this instrument to convey to the said A. K. McInnis all my property rights, rights of action, and other interest I may own in the said copartnerships with the Long Leaf Lumber Company, J. W. McInnis, J. D. Byrd, Charley Byrd, Joe Byrd, T. J. Byrd, and all other matters of interest pertaining to the above-named persons and copartnerships with regard to my interest at Byrd, Mississippi. I also quitclaim my accounts for feed supplies and other expenses incurred on account of my interest in the aforesaid copartnerships, and agree to cancel all such as may be due or owing me by virtue of my relation to the aforesaid interest. I also agree to discharge

all matters of debt due and owing by me as balance due on the above-described timber and convey the same free of incumbrance.

"For the above-named consideration the said A. K. McInnis conveys and warrants to me all his rights, title and interest in and to the firm of Manning & McInnis at Shivers, Mississippi, I (G. L. Manning) agreeing to discharge all debts due and owing by the said firm. It is agreed that A. K. McInnis is to fill all orders in process of manufacture and deliver them."

This deed was signed by Manning and acknowledged by him on the 21st day of April, 1920. On the same day A. K. McInnis by deed conveyed to Manning his (McInnis') undivided one-half interest in the business of Manning & McInnis at Shivers, Miss., upon the following terms and conditions:

"(1)  The said G. L. Manning agrees to transfer to me the interest he owns at Byrd, Miss., and specifically set out in a separate instrument of even date herewith.

"(2)  The said G. L. Manning agrees to assume payment of all debts due and owing by the firm of Manning & McInnis of whatever description.

"(3)  The said G. L. Manning is to receive all moneys, accounts, machinery, live stock and equipment, and all other things of value owned by the said firm of Manning & McInnis, and for which the said A. K. McInnis conveys his whole undivided one-half interest in and to the firm of Manning & McInnis, Shivers, Miss.

"(4)  It is agreed that the said G. L. Manning will fill and ship all the orders in the books of the firm of Manning & McInnis and will discharge all other obligations the said firm may be liable for."

This deed was duly signed and acknowledged. Prior to the execution of these deeds there had been negotiations for some days between McInnis and Manning with reference to McInnis buying Manning's interest in the Long Leaf Lumber Company at Byrd, Miss., and a contract had been drafted, but was unsigned and undelivered, for the

conveyance to McInnis of Manning's one-half interest in the business and timber of the Long Leaf Lumber Company and the Manning at Byrd, Miss. Under these nego· tiations and the draft of the agreement which was not executed, the value of Manning's interest at Byrd, Miss., was placed at thirteen thousand four hundred and forty dollars, of which seven thousand dollars was to be paid in cash, and McInnis was to assume certain incumbrances upon the timber afterwards conveyed to McInnis. There was something over sixteen hundred dollars in the bank at McLain, Miss., which under the previous agreement, was to be retained and credited by Manning on the cash payment of seven thousand dollars; said moneys were then in the bank and belonged to the partnership between the Long Leaf Lumber Company and Manning.

When this prior agreement was drafted and about ready for signature, Manning made a proposition to McInnis to sell or buy the partnership business at Shivers, Miss., offering to take twelve thousand dollars for his one-half interest therein, or to buy McInnis' interest therein for twelve thousand dollars. McInnis asked for a few days to look the proposition over and to make investigation of the business, and, pending this investigation, it was suggested that the contract with reference to the business at Byrd, Miss., be held up and the same was never signed or delivered. McInnis, after investigating the business at Shivers, Miss., testified that he decided to buy a one-half interest in that business at twelve thousand dollars, but this intention was not disclosed to Manning, but when they came together again McInnis made the proposition that he would sell his one-half interest in the business at Shivers, Miss., for Manning's one-half interest in the business at Byrd, Miss., including the timber, which proposition was ac· cepted and the contracts above referred to drawn and signed by the respective parties. After the execution of these contracts and after they were delivered, McInnis made demand upon Manning for the money derived from the sale of lumber above referred to in the bank at Mc-

Lain, Miss., which Manning refused to turn over, claiming that he was to have this money under the former arrangement, and that he had drawn the money from the bank between the 16th and 22d day of April, 1920, and that he had paid out about one thousand dollars of it in meeting a pay roll. He does not disclose what pay roll he paid the money out upon nor the day upon which the same was paid, nor does he disclose what he did with the other money. McInnis testified that when the deeds above referred to were signed that Manning was in a hurry to catch a train to Shivers, Miss., and to meet a pay roll there.

The bill filed by McInnis in this suit sought a discovery as to moneys, etc., passing under the above conveyance. The defendant answered, but made no discovery, and set up former negotiations with reference to the buying of his interest in Long Leaf Lumber Company by McInnis, and set up that it was understood at the time of the signing of the deeds that the money had been paid out by him, and it was to go to him under the former arrangement, and made his answer a cross-bill, seeking to have his right to the money declared and to reform the deed of McInnis if necessary. The complainant, McInnis, objected to the introduction of the evidence of the prior negotiations and the memorandum agreement reduced to writing but unsigned and undelivered, on the ground that it was incompetent, and that the deeds were not uncertain in their meaning, but that their meaning was plain and unambiguous and could not be affected by antecedent negotiations and agreements. Much testimony was introduced by the defendant along the line of what the verbal agreements were, over objection, but rulings were reserved by the chancellor.

It is the duty of the litigant, when he makes objections, to insist upon a ruling, and if he does not do so he cannot complain on appeal that such rulings were error. Of course it is the duty of the court hearng a case to rule upon the objections as and when made, unless he is un-

certain as to what the law is, and should then only delay the ruling until proper investigation can be made. He should rule prior to entering a final decree, so that the parties may take such steps as may be necessary, in the light of his ruling, to protect their interests. The rules of evidence are founded upon the wisdom of the ages, and are conducive to the attainment of justice, and tend to eliminate foreign and irrelevant matters that may becloud the issue or confuse the mind of the trior of facts.

In the present case we think the deeds are unambiguous and plain upon their face, and that all antecedent negotiations were merged in the contract, signed and delivered on this 21st of April, 1920. We think that, under this contract, the money received from the lumber shipment of the Long Leaf Lumber Company, so far as Manning's interests were concerned, passed to McInnis; that, if Manning paid these moneys out prior to the agreement to the accounts of the Long Leaf Lumber Company, he would be entitled to be protected to that extent, but if these moneys were paid out subsequent to the delivery of the deed, or were paid out in meeting the pay roll at Shivers, Miss., a decree should be rendered against Manning therefor. In other words, it would be his duty to account for all moneys on hand at the time of the completion of the contract, and after the contract was made he would have no right to use these funds. He assumed in his contract the obligation of paying the debts of the partnership at Shivers, Miss. The old negotiations were entirely separate and distinct from the last trade, and have no proper bearing thereon because entirely different considerations were involved. We think, therefore, the chancellor was in error in admitting this evidence of antecedent agreements and in decreeing a dismissal of the complanant's original bill. We think he was correct in dismissing the cross-bill.

The judgment will therefore be reversed as to dismissal of the original bill, but affirmed as to the dismissal of the cross-bill.

*Reversed and remanded.*